[Cite as *Bank of New York Mellon v. Grund*, 2015-Ohio-466.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| THE BANK OF NEW YORK MELLON, | : | **O P I N I O N** |
| SUCCESSOR IN INTEREST TO | | |
| JPMORGAN CHASE BANK, AS | : | |
| TRUSTEE FOR THE REGISTERED | | **CASE NO. 2014-L-025** |
| HOLDERS OF NOVASTAR MORTGAGE | : | |
| FUNDING TRUST, SERIES 2004-3 | | |
| NOVASTAR HOME EQUITY LOAN | : | |
| ASSET-BACKED CERTIFICATES, | | |
| SERIES 2004-3, | : | |
| | | |
| Plaintiff-Appellee, | : | |
| | | |
| - vs - | : | |
| | | |
| LOUIS F. GRUND, JR., et al., | : | |
| | | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 12 CF 001669.

Judgment: Affirmed.


*James S. Wertheim* and *Kimberly Y. Smith Rivera,* McGlinchey Stafford, PLLC, 25550 Chagrin Boulevard, Suite 406, Cleveland, OH 44122-4640 (For Plaintiff-Appellee).

*Dennis M. Callahan,* 7665 Mentor Avenue, PMB #203, Mentor, OH 44060 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Louis F. Grund, Jr., appeals the judgment of the Lake County Court of Common Pleas granting appellee, The Bank of New York Mellon, Successor in Interest to JP Morgan Chase Bank, As Trustee For the Registered Holders of Novastar

Mortgage Funding Trust, Series 2004-3 Novastar Home Equity Loan Asset-Backed Certificates Series 2004-3 ("The Bank of New York")'s motion for summary judgment on its complaint for foreclosure against appellant. At issue is whether The Bank of New York had standing when it filed this action. For the reasons that follow, we affirm.

{¶2} In August 2004, appellant obtained a mortgage loan from Novastar Mortgage, Inc. to purchase a home in Willoughby, Ohio. On August 11, 2004, appellant signed a note in favor of Novastar in the amount of $104,000. On that same date, in order to secure the note, appellant signed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee or agent of Novastar.

{¶3} Subsequently, Novastar endorsed the note in favor of JP Morgan Chase Bank, while Novastar retained possession of the note.

{¶4} Appellant failed to make any of the monthly payments due on the note and mortgage on and after October 1, 2011. On December 16, 2011, appellant was notified of his default and the acceleration of the amount owed under the note.

{¶5} Thereafter, on March 21, 2012, Novastar executed an "allonge," i.e., a separate endorsement instrument, transferring the note to The Bank of New York. The allonge was ineffective as a negotiation since Novastar, the original lender, had already endorsed the note to JP Morgan Chase Bank. Thus, any subsequent endorsement would have to be made by JP Morgan Chase Bank.

{¶6} With respect to the mortgage, on May 14, 2012, MERS, the original mortgagee, assigned the mortgage to The Bank of New York. The assignment contained an error in The Bank of New York's name, incorrectly indicating that The Bank of New York was the "successor in interest to" JP Morgan Chase Bank, when, in

2

fact, it was the "successor trustee of" JP Morgan Chase Bank. The mortgage was duly recorded on May 30, 2012.

{¶7} On June 19, 2012, The Bank of New York filed a complaint in foreclosure against appellant, alleging that he was in default on the note and mortgage in the amount of $95,000; that all conditions precedent were met; and that the balance due was accelerated. A copy of the note in favor of Novastar was attached to the complaint containing the endorsement to JP Morgan Chase Bank along with the March 21, 2012 allonge transferring the note to The Bank of New York. A copy of the mortgage in favor of MERS was also attached to the complaint along with a copy of the May 14, 2012 assignment of the mortgage from MERS to The Bank of New York.

{¶8} Appellant filed an answer, admitting he signed the note and mortgage. The answer included an affirmative defense alleging that The Bank of New York lacked standing.

{¶9} Subsequently, JP Morgan Chase Bank transferred the note via a revised allonge to the Bank of New York. While the revised allonge was undated, it was signed on or about July 18, 2013. This revised allonge was necessary because the original allonge purported to transfer the note directly from Novastar to The Bank of New York. Since the note had already been endorsed by Novastar to JP Morgan Chase Bank, the transfer to The Bank of New York had to be made by JP Morgan Chase Bank, not Novastar, in order to complete the note's chain of title.

{¶10} On July 18, 2013, The Bank of New York filed a notice of filing the revised allonge.

**{¶11}** Thereafter, on August 26, 2013, MERS executed a Corrective Assignment of Mortgage to correct the error in The Bank of New York's name that appeared in the May 14, 2012 assignment of the mortgage. The Corrective Assignment did not change the identity of the assignee; rather, it merely corrected its name to indicate that The Bank of New York was the "successor trustee," not the "successor in interest" to JP Morgan Chase Bank.

**{¶12}** On October 7, 2013, The Bank of New York filed a "motion to substitute the plaintiff." The motion did not, however, seek to substitute a party (as provided for in Civ.R. 25), but, rather, sought to correct The Bank of New York's name as it appeared on the assignment of mortgage.

**{¶13}** The Bank of New York subsequently filed a motion for summary judgment. In support of its motion, The Bank of New York attached the affidavit of Stephen Lee, who stated he was employed by The Bank of New York's servicing agent. He authenticated the records pertaining to appellant's mortgage loan, which were attached to his affidavit. He stated that the last payment appellant made on his mortgage loan was two years ago in October, 2011; that appellant was in default by failing to pay his monthly payments when due; that The Bank of New York had accelerated all amounts owed under the loan in compliance with the terms of the note and mortgage; and that appellant owes $95,000 plus interest. Appellant filed a brief in opposition, but did not file any countervailing affidavits or other Civ.R. 56 evidentiary materials in support. The trial court entered judgment on February 3, 2014, granting The Bank of New York's motion for summary judgment; entering judgment in favor of The Bank of New York in the amount of $95,000; and issuing a decree in foreclosure.

{¶14} Appellant appeals the court's judgment, asserting two assignments of error. Because they are related, they are considered together. They allege:

{¶15} "[1.] The trial court committed prejudicial error in granting Plaintiff-Appellee The Bank of New York Mellon's motion for summary judgment where lack of standing and a fraudulent allonge to the promissory note had been raised as affirmative defenses, and more than a year after the complaint was filed, plaintiff-appellee introduced a new undated allonge by way of simply filing a 'notice.'

{¶16} "[2.] The trial court committed prejudicial error in granting Plaintiff-Appellee Bank of New York Mellon's motion for summary judgment where lack of standing and a faulty assignment of mortgage had been raised as affirmative defenses, and more than a year after the complaint was filed, plaintiff-appellee introduced a new assignment of mortgage by way of a misleading motion to substitute a new party plaintiff."

{¶17} Summary judgment is a procedural device intended to terminate litigation and to avoid trial when there is nothing to try. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358 (1992). Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 268 (1993).

{¶18} The party seeking summary judgment on the ground that the nonmoving party cannot prove his claim bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the

absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).

{¶19} The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. *Dresher, supra*, at 293.

{¶20} If this initial burden is not met, the motion for summary judgment must be denied. *Id.* However, if the moving party meets his initial burden, the nonmoving party must then produce competent evidence showing there is a genuine issue for trial. Civ.R. 56(E). When a motion for summary judgment is made and supported as provided in Civ.R. 56, the adverse party may not rest upon the mere allegations or denials of his pleadings. The adverse party's response must set forth specific facts by affidavit or as otherwise provided by Civ.R. 56, showing that there is a genuine issue for trial. *Id.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against him. *Id.*

{¶21} Since a trial court's decision ruling on a motion for summary judgment involves only questions of law, we conduct a de novo review of the judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, ¶41 (11th Dist.).

{¶22} In Ohio, courts of common pleas have jurisdiction over justiciable matters. Ohio Constitution, Article IV, Section 4(B). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). Standing involves a determination of whether a party has alleged a personal stake in the outcome of the controversy to ensure the dispute will be presented in an adversarial context. *Mortgage Elec.*

6

*Registration Sys., Inc. v. Petry*, 11th Dist. Portage No. 2008-P-0016, 2008-Ohio-5323, ¶18.

**{¶23}** In a mortgage foreclosure action, the mortgage lender must establish an interest in the promissory note or the mortgage in order to have standing to invoke the jurisdiction of the common pleas court. *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶28. Further, because standing is required to invoke the trial court's jurisdiction, standing is determined as of the filing of the complaint. *Id.* at ¶24. This court has repeatedly followed these holdings in *Schwartzwald*. *Fed. Home Loan Mortg. Corp. v. Rufo*, 11th Dist. Ashtabula No. 2012-A-0011, 2012-Ohio-5930, ¶18 (overruled in part on other grounds in *CitiMortgage, Inc. v. Oates*, 11th Dist. Trumbull No. 2013-T-0011, 2013-Ohio-5077, ¶19); *JPMorgan Chase Bank, N.A. v. Blank*, 11th Dist. Ashtabula No. 2013-A-0060, 2014-Ohio-4135, ¶17; *Bank of N.Y. Mellon v. Veccia*, 11th Dist. Trumbull No. 2013-T-0101, 2014-Ohio-2711, ¶10. *Accord CitiMortgage, Inc. v. Patterson*, 8th Dist. Cuyahoga No. 98360, 2012-Ohio-5894, ¶21. "The requirement of an 'interest' can be met by showing an assignment of either the note or mortgage." *Fed. Home Loan Mtge. Corp. v. Koch*, 11th Dist. Geauga No. 2012-G-3084, 2013-Ohio-4423, ¶24.

**{¶24}** The Supreme Court of Ohio recently clarified its holding in *Schwartzwald* in *Bank of America, N.A. v. Kuchta,* __Ohio St.3d __, 2014-Ohio-4275. In *Kuchta*, the Court held that, while standing is a jurisdictional requirement in that a party's lack of standing will prevent him from invoking the court's jurisdiction over his action, a party's ability to invoke the court's jurisdiction involves the court's jurisdiction over a particular case, not subject-matter jurisdiction. *Id.* at ¶22.

7

{¶25} Whether standing exists is a matter of law that we review de novo. *Bank of Am., NA v. Barber*, 11th Dist. Lake No. 2013-L-014, 2013-Ohio-4103, ¶19.

{¶26} Appellant argues the trial court erred in relying on the revised allonge to transfer the note to The Bank of New York because, as he alleged in his answer, the allonge was "unlawfully fabricated" and endorsed by one who lacked authority to sign it. As a result, he argues The Bank of New York did not hold the note when the complaint was filed and thus did not have standing. However, a party cannot rest on the allegations of his pleadings in summary judgment proceedings. Civ.R. 56(E). Because appellant failed to present any affidavits or other Civ.R. 56(C) evidentiary materials in support of these allegations in his answer, the allegations are insufficient to avoid summary judgment.

{¶27} However, The Bank of New York concedes that the original allonge, dated March 21, 2012, attached to the note purporting to transfer it from Novastar, the original lender, to The Bank of New York was ineffective as a negotiation because the note itself shows an endorsement by Novastar to JP Morgan Chase Bank. Thus, any subsequent negotiation of the note was required to be made by JP Morgan Chase Bank, not Novastar. Such a transfer was made via a revised allonge, pursuant to which JP Morgan Chase Bank transferred the note to The Bank of New York. However, as appellant correctly argues, this revised allonge is not dated. The only evidence of its date is that it was filed in the trial court on July 18, 2013, one year *after* the complaint was filed. This court has stated that every assignment in the chain of title of a promissory note must be proved. *Premier Capital, LLC v. Baker*, 11th Dist. Portage No. 2011-P-0041, 2012-Ohio-2834, ¶39. Because there is no evidence the revised allonge

8

was executed before the complaint was filed, The Bank of New York could not rely on it to give it standing as a holder of the note.

{¶28} **The Bank of New York's Standing as a Non-Holder in Possession of the Note**

{¶29} However, this is not the end of the analysis. R.C. 1303.31 provides in pertinent part:

{¶30} (A) "Person entitled to enforce" an instrument means any of the following persons:

{¶31} (1) The holder of the instrument; [or]

{¶32} (2) A non holder in possession of the instrument who has the rights of a holder * * *.

{¶33} Further, R.C. 1303.22(A) provides: "An instrument is transferred when it is delivered by a person other than its [maker] for the purpose of giving to the person receiving delivery the right to enforce the instrument." Moreover, "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument * * *." R.C. 1303.22(B).

{¶34} A "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." R.C. 1301.201(B)(21).

{¶35} The Second District in *LaSalle Bank Natl. Assn. v. Brown*, 2d Dist. Montgomery No. 25822, 2014-Ohio-3261, stated, "a person need not be a 'holder' of the instrument in order to be entitled to enforce it. Instead, a person can be a non-holder in possession of the instrument who has the rights of a holder. This status can be

9

bestowed in various ways." *Id.* at ¶36.  By way of explanation, the Second District in *Brown* quoted *In re Veal*, 450 B.R. 897 (Bankr.9th Dist.Ariz. 2011), as follows:

**{¶36}** [A] person becomes a nonholder in possession if the physical delivery of the note to that person constitutes a "transfer" but not a "negotiation." * * * Under the UCC, a "transfer" of a negotiable instrument "vests in the transferee any right of the transferor to enforce the instrument."  UCC § 3-203(b). As a result, if a holder transfers the note to another person by a process not involving an Article 3 negotiation * * * that other person (the transferee) obtains from the holder the right to enforce the note even if no negotiation takes place and, thus, the transferee does not become an Article 3 "holder." *Brown, supra* at ¶36, quoting *Veal* at 911.

**{¶37}** To further explain the point, the Second District in *Brown* quoted *Fifth Third Mtge. Co. v. Bell*, 12th Dist. Madison No. CA2013-02-003, 2013-Ohio-3678, as follows:

**{¶38}** An instrument is transferred when it is delivered by a person, other than the [maker], for the purpose of giving the person receiving the delivery the right to enforce. R.C. 1303.22(A). If the transferee is not a holder because the transferor did not endorse, the transferee is nevertheless a person entitled to enforce the instrument if the transferor was a holder at the time of transfer. R.C. 1303.22(B); R.C. 1303.22 cmt. 2.

{¶39} [Fifth Third's] allegations that it was in possession of a note and entitled to enforce it, combined with the copy of the unendorsed note, at the very minimum, demonstrated that [Fifth Third] was entitled to enforce as a nonholder in possession. *See* R.C. 1303.22(B) * * *. The note attached to the complaint was payable to State Savings Bank. Therefore, State Savings Bank was the initial holder because the note was payable to it as an identified person. R.C. 1303.25(A). The fact that [Fifth Third] was in possession of the unendorsed note along with language used in the mortgage and the assignment of the mortgage showed a chain of custody and indicated that State Savings Bank or some other person transferred the note to [Fifth Third] with the intent that [Fifth Third] be entitled to enforce the note. Bell [the defendant mortgagor] never challenged [Fifth Third's] possession of this unendorsed note. Based on these facts, [Fifth Third] had an interest in the note as a non-holder in possession. *Brown* at ¶37, quoting *Bell* at ¶20-22.

{¶40} Here, Mr. Lee stated in his affidavit that at the time of the filing of the complaint and continuously since, The Bank of New York has been in possession of the original promissory note. Moreover, appellant never challenged The Bank of New York's possession of the note. Further, the note was endorsed by Novastar to The Bank of New York on March 21, 2012, when Novastar was still the holder of the note. The March 21, 2012 allonge (which was incorporated into the note) states that the allonge

11

transfers the note from "the present Owner and Holder of the Note, NOVASTAR MORTGAGE, INC. ('Transferor') as of [March 21, 2012]. As a result of said transfer, NOVASTAR MORTGAGE, INC. has no further interest in the Note." The problem with the purported negotiation from Novastar to The Bank of New York is that the note was previously endorsed by Novastar to JP Morgan Chase Bank. Thus, the March 21, 2012 endorsement from Novastar to The Bank of New York by allonge was *ineffective as a negotiation*. However, Novastar's transfer of the note to The Bank of New York via the March 21, 2012 allonge coupled with Novastar's delivery of the note to The Bank of New York evidenced Novastar's intent to give The Bank of New York the right to enforce it. As a result, pursuant to R.C. 1303.22(B), The Bank of New York was a non-holder in possession with the right to enforce the note as of March 21, 2012, and thus had standing when it filed the complaint two months later.

{¶41} **The Bank of New York's Standing as the Mortgage Holder**

{¶42} In any event, even if the note was not transferred to The Bank of New York when the complaint was filed, The Bank of New York had standing because the mortgage was assigned to it on May 14, 2012, one month before the complaint was filed. Appellant argues the mortgage did not confer standing on The Bank of New York because the revised assignment correcting The Bank of New York's name was executed after the complaint was filed. However, appellant cites no case law holding that a party cannot correct its name on a mortgage assignment. In fact, Ohio case law supports the opposition conclusion. In *Wells Fargo Bank NA v. Arlington*, 5th Dist. Delaware No. 13CAE030016, 2013-Ohio-4659, the name of the assignor was corrected *after* the complaint was filed. The Fifth District stated:

12

**{¶43}** On March 20, 2007, MERS assigned the Mortgage to Wells Fargo. The original Assignment of Mortgage stated, "*Mortgage Electronic Registration Systems, Inc.* * * * does hereby sell, assign, transfer and set over unto Wells Fargo Bank, N.A. * * * a certain mortgage from Dean E. Arlington * * *." * * * [Wells Fargo filed its complaint in foreclosure on January 11, 2008.] On July 20, 2010, Wells Fargo executed a corrective Assignment of Mortgage * * *. The correction changed the name of the assignor to: "*Mortgage Electronic Registration Systems, Inc., as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns.*"

* * *

**{¶44}** A reading of the Mortgage and the Assignment of Mortgage shows that MERS, as nominee for TBW, assigned the Mortgage to Wells Fargo *prior to the filing of the complaint in foreclosure*. (Emphasis added.) *Id.* at ¶32, ¶34.

**{¶45}** It is worth noting that appellant concedes in his brief, "There wasn't a new plaintiff. The original plaintiff and the substitute plaintiff were the same, The Bank of New York Mellon." Although the Bank of New York inartfully referred to its motion to correct its name as a "motion to substitute the plaintiff," appellant concedes the motion did not substitute another party for the original plaintiff, but simply corrected The Bank of New York's name.

**{¶46}** Applying the Fifth District's rationale in *Arlington, supra*, to the facts of this case, the mortgage, the May 14, 2012 mortgage assignment, and the August 26, 2013

13

corrected assignment, when read together, show that MERS assigned the mortgage to The Bank of New York under its corrected name, effective May 14, 2012. Because The Bank of New York held the mortgage one month before the filing of the complaint, it had standing to file this action.

{¶47} **The Bank of New York's Standing Based on The Assignment of the Mortgage To The Bank**

{¶48} Further, MERS' assignment of the mortgage to The Bank of New York on May 14, 2012, was sufficient to transfer both the mortgage and the note. *Bank of New York v. Dobbs*, 5th Dist. Knox No. 2009-CA-000002, 2009-Ohio-4742, ¶28. In *Dobbs*, the Fifth District stated:

{¶49} The Restatement [III, Property (Mortgages)] asserts as its essential premise * * * that it is nearly always sensible to keep the mortgage and the [note] it secures in the hands of the same party. This is because in a practical sense separating the mortgage from the [note] destroys the efficacy of the mortgage, and the note becomes unsecured. The Restatement concedes on rare occasions a mortgagee will disassociate the [note] from the mortgage, but courts should reach this result only upon evidence that the parties to the transfer agreed. Far more commonly, the intent is to keep the rights combined * * *. Thus, *the Restatement [provides] that transfer of the [note] also transfers the mortgage and vice versa*. Section 5.4(b) [provides] "Except as otherwise required by the Uniform Commercial Code, a transfer of a

14

mortgage also transfers the [note] the mortgage secures unless the parties to the transfer agree otherwise." Thus, [the note] follows the mortgage if the record indicates the parties so intended. (Emphasis added.) *Dobbs, supra*, at ¶28. (Emphasis added.)

**{¶50}** The Fifth District in *Dobbs* held that the assignment of a mortgage, without an express transfer of the note, is sufficient to transfer both the mortgage and the note, if the record indicates that the parties intended to transfer both. *Id.* at ¶31.

**{¶51}** Here, the mortgage provides that it secures to the Lender, Novastar, the performance of appellant's agreements under the promissory note. Further, the note provides that the mortgage, dated the same date as the note, protects the holder of the note from loss that might result if appellant does not keep the promises made in the note.

**{¶52}** In addressing the provisions in the note and mortgage at issue in *Dobbs, supra*, which are virtually identical to those at issue here, the Fifth District held: "Because the note refers to the mortgage and the mortgage, in turn, refers to the note, we find a clear intent by the parties to keep the note and mortgage together, rather than transferring the mortgage alone." *Id.* at ¶36.

**{¶53}** We therefore hold that the instant note and mortgage evidenced the parties' intent to keep the instruments together. Thus, the assignment of the mortgage to The Bank of New York on May 14, 2012, even without an express transfer of the note, was sufficient to transfer *both the mortgage and the note*. Thus, The Bank of New

15

York had an interest in the note *and* mortgage before filing the complaint. It therefore had standing, pursuant to *Schwartzwald, supra*, to file this foreclosure action.

{¶54} Based on the foregoing analysis, the trial court did not err in granting summary judgment in favor of The Bank of New York.

{¶55} For the reasons stated in this opinion, the assignments of error lack merit. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


COLLEEN MARY O'TOOLE, concurs in judgment only,

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

_____


DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

{¶56} I concur in the majority's decision, affirming the judgment of the trial court, and its holding that the Bank of New York Mellon had standing in this matter. I write separately to expand upon and clarify one important issue regarding how the Bank acquired standing.

{¶57} In this case, the majority concludes that, although the March 21, 2012 allonge which purported to transfer Novastar's interest in the note to the Bank of New York was ineffective as a negotiation, the transfer of the note via the allonge coupled with its delivery evidenced Novastar's intent to give the Bank of New York the right to enforce the note. While I agree with the proposition that a non-holder, who has not

16

obtained holder status due to an ineffective negotiation, may be permitted to enforce the note, certain conditions must be met for a party to become entitled to enforce.

{¶58} Importantly, the transfer of the note under such circumstances must be from a holder, as is outlined by the majority. *Supra* at ¶ 36-38; R.C. 1303.22. Thus, Novastar was required to be a holder at the time it transferred possession of the note to the Bank of New York. This is a logical application of the law, since holding otherwise would allow a party to transfer a note in which it does not hold an interest.

{¶59} With this in mind, it is important to thoroughly consider whether Novastar was the holder at the time of the transfer to the Bank of New York. As to this critical issue, the majority states only that Novastar was the holder of the note on March 21, 2012, at the time of the allonge, relying solely on Novastar's statement in the allonge that it "transfers the note from 'the present Owner and Holder of the Note, NOVASTAR MORTGAGE, INC.'" *Supra* at ¶ 40. The fact that Novastar claimed to be the holder in the allonge is, alone, insufficient to establish that it actually was the holder.

{¶60} This is especially true given the facts of this case, where Novastar endorsed the note to another party, JP Morgan, previously and then still claimed to be the holder at the time it endorsed the note to the Bank of New York. The holder is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." R.C. 1301.201(B)(21)(a). Here, the note was neither payable to bearer, since it had been endorsed to JP Morgan, nor was it payable to the party in possession, Novastar.

{¶61} However, it is still appropriate to find that Novastar could grant the rights of a holder to the Bank of New York. Novastar claimed at the summary judgment stage

to always have been the holder of the note, with JP Morgan having been a trustee. Grund admitted in his motion for summary judgment that Novastar never transferred possession of the mortgage to JP Morgan and that he was unaware of where the note is located. He does not claim that it was in the possession of JP Morgan. If the note was not given to JP Morgan, the note would not have been properly negotiated and Novastar would presumably remain the holder, in the absence of any evidence that it was acting as JP Morgan's agent. *See* R.C. 1303.21(A); *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. Franklin No. 12AP-953, 2013-Ohio-3340, ¶ 25, citing UCC Official Comment, Section 3-201, Comment 1 (1990) ("[n]egotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent") (emphasis omitted).

{¶62} With the foregoing clarification, I concur in the majority's judgment.

18